UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------X

UNITED STATES OF AMERICA, : 98-CR-1129 (RJD)

v. : March 23, 2010

ROY AGELOFF, : Brooklyn, New York

Defendant.

-----------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE RAYMOND J. DEARIE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government: BENTON J. CAMPBELL, ESQ.
UNITED STATES ATTORNEY
BY: DANIEL SPECTOR, ESQ.
ASSISTANT U.S. ATTORNEY
271 Cadman Plaza East
Brooklyn, New York 11201

For the Defendant: SCOTT FENSTERMAKER, ESQ.

Audio Operator: LOAN HONG

Court Transcriber: ARIA TRANSCRIPTIONS
c/o Elizabeth Barron
31 Terrace Drive, 1st Floor
Nyack, New York 10960
(215) 767-7700

Proceedings recorded by electronic sound recording, transcript produced by transcription service

THE CLERK: We are on this afternoon for a status conference. This is U.S.A. versus Roy Ageloff, docket number CR-98-1129. Mr. Ageloff is defendant number eight.

Can I ask the attorneys please to note their appearance, beginning with counsel for the government.

MR. SPECTOR: Good afternoon, Your Honor. Daniel Spector for the government.

MR. FENSTERMAKER: Good afternoon, Your Honor. Scott Fenstermaker for Mr. Ageloff.

THE COURT: Gents, good afternoon.

Well, since I saw you last, I received the -- well, first things first.

I have Mr. Fenstermaker's letter of March 21, referring to a pro se filing of Mr. Ageloff's, which I take is this (indicating).

MR. FENSTERMAKER: Yes, Your Honor, that is.

THE COURT: This is a handwritten, lengthy, handwritten submission, dated March 17th, 2010, which according to -- according to Mr. Fenstermaker's letter is now being withdrawn.

Is that right?

MR. FENSTERMAKER: That's my request, Your Honor, although it's my understanding Mr. Ageloff objects to my attempt to withdraw his pro se submission.

THE COURT: Is that right? Okay.

Sir?

THE DEFENDANT: That's correct.

THE COURT: How come?

THE DEFENDANT: I -- I feel that the submission that I --

THE CLERK: Excuse me for one second. Can I just move this microphone? Okay. Okay, Mr. Ageloff.

THE DEFENDANT: Okay.

I feel that the submission that I filed, in terms of the affidavit in support of motion to dismiss, is --

THE COURT: Motion to dismiss what?

THE DEFENDANT: Well, there's a motion to dismiss, as far as I understand, that was going to be filed prior to today's hearing. Unfortunately, that didn't take place. It's actually my understanding that it is in the midst of taking place.

But in any event, my submission was to provide the Court with some information that I feel is extremely important to my case. And therefore, I would like for it to remain on the record.

THE COURT: All right, we'll talk about it. Let's get back to the subject matter at hand.

I have correspondence from counsel, like ships passing in the night, it seems to me. This case has been around for years. Voluminous information has changed hands,

both in the context of the criminal case as well as this related issue of restitution. It appears to me that we're going to have to have a hearing, and I'm happy to conduct such a hearing.

I must say, I don't recall a single word of testimony during the Eljindy (ph) trial, for example, about transfers of house stocks from one account to -- from one account to another. Maybe I'm wrong. I don't recall a single word of evidence that these house stocks at any time had any value, much less that they -- there were cash payouts on these accounts. Not a word of it. And given what ultimately occurred, I'd be surprised if -- if there were any available evidence of that. But I have a -- I'm willing to hear what you've got.

The government has the chap who prepared years ago this report.

MR. SPECTOR: That's correct, Your Honor. I've been in contact with him. In terms of scheduling, he's tied up on another trial for most of April, but after that, will be available to testify.

THE COURT: This case will never end. And we'll have to bring him in and conduct a hearing. The other --

MR. FENSTERMAKER: Your Honor --

THE COURT: -- irony to all of this is that Mr. Ageloff perhaps is in a better position than anyone on all

of this, and yet I have a lengthy letter from counsel seeking additional discovery, which of course, I guess to some extent, acknowledges is no longer available.

MR. SPECTOR: Well, as a -- as a preliminary matter, it's our view that that's unnecessary and inappropriate and would largely, if not entirely, be duplicative of the information we've already provided, which is the raw data from the blue sheets, which shows all the trades, all the purchases and all of the sales to all the victims.

THE COURT: Per victim.

MR. SPECTOR: Per victim, correct. And we've provided both that raw data as well as the restitution report, which breaks down the total loss per victim as well as the address of each victim. We provided that in December to defense counsel. I believe it was provided years ago to the defendant as well as to the Court. And in our view, that's more than sufficient to meet our burden in this context.

THE COURT: Sir?

MR. FENSTERMAKER: Your Honor, Mr. Ageloff briefly alluded to a motion to dismiss. And the reason that he alluded to that is that I will -- I'm in the process of drafting such a document. I don't know if the proper title of it would be a motion to dismiss. But basically, the

effect of it would be to request that the Court preclude the government from offering proof at this stage with respect to the restitution issue because of what I'll call speedy sentencing issues.

On speedy sentencing, I would -- I would drop into various issues of due process, speedy trial, 3664(d)(5), as well as Federal Rule of Criminal Procedure 32.

In addition to that --

THE COURT: Outrageous.

MR. FENSTERMAKER: -- those various -- those various motions are --

THE COURT: Absolutely outrageous, but go ahead.

MR. FENSTERMAKER: Yes, Your Honor.

THE COURT: That's not directed at you, Mr. Fenstermaker.

MR. FENSTERMAKER: Yes, Your Honor.

But in addition, Your Honor, I would like to, as part of that motion, make what I would call a criminal version of a motion for summary judgment. And what I would like to do, Your Honor, is point out that based upon the information that the government has available to it, that it cannot, as a matter of law, prove its restitution claims.

And the reason for that, Your Honor, is that the -- the raw data that they claim to have, as well as the restitution report that I understand was created from that

raw data, could not -- does not prove their claims of restitution, simply because it's incomplete. It's incomplete in any number of ways, Your Honor.

I do not know specifically what the issues were in the trials that you alluded to, but I do not believe that one of the elements of proof in any of those was a restitutionary claim. I think that they were basically criminal trials which were directed at determining whether or not people committed crimes.

And in this case, Your Honor, based upon what I now believe, after reviewing the evidence, reviewing the data that I've seen, is incomplete reports that are based upon hearsay; that were created as a summary by a private organization for the purpose of feeding information to -- to law enforcement, I don't think that they can prove their claims, and I'd like to be able to submit that.

And the reason that I would like to submit that Your Honor, before the hearing, is that I think, at least with respect to that last issue, which I inartfully referred to as a criminal summary judgment motion, I think that that would frame the issues for the hearing. Even if the Court denies the motion, it would certainly frame the -- the issues for the hearing, because that's what the cross-examination is going to be about.

You mentioned that the house stocks didn't have

any value. I've seen many charts that were compiled by experts that Mr. Ageloff's prior counsel had retained, which show that the house stocks did in fact have value. Now, I'm not saying that this wasn't a fraudulent scheme and I'm not saying that people didn't lose money. But to say that they were all equal to zero contradicts the evidence that I've seen.

Now, that evidence may not have been presented to the Court at any point in time, because the evidence that I've seen is all in the form of graphs, basically, that were attached to expert reports that Mr. Ageloff's prior attorneys had created.

And I would like the opportunity to get those together. I've actually contacted an expert on my own, Your Honor, who might be able to go through this and help me, from a forensic accounting standpoint, to go through it. My only problem getting that in the works is that I have to give him access to Mr. Ageloff in the MDC.

I've written to the legal staff at the MDC for the purpose of getting the expert to go to see Mr. Ageloff, so that they can give me an idea as to how much this might cost, so that I can present a -- I think it's a CJA form 21 to the Court for its pre-approval, because this is going to be a -- a monumental undertaking.

I understand that this is frustrating for the

Court. This is a case that's been going on for -- for I'm sure too long. But the problem is, Your Honor, that I'm not sure that that is Mr. Ageloff's fault.

THE COURT: All this for a man who agreed at sentencing that the losses sustained were in excess of eighty million dollars.

MR. FENSTERMAKER: Well, that -- Your Honor, that's a different issue than restitution. And I could briefly describe why I feel that that's a different issue and why we still need to focus on this, Your Honor.

First of all, with respect --

THE COURT: The eighty million was in the context of restitution.

MR. SPECTOR: That's correct, Your Honor.

MR. FENSTERMAKER: Your Honor -- Your Honor, with respect to that issue, I don't think that that was part of the plea agreement.

THE COURT: If I recall correctly -- well --

MR. FENSTERMAKER: I don't think that that was part of the plea agreement. I mean, if it was part of the plea agreement, then --

THE COURT: It was in the plea agreement. If I recall correctly, the opinion from the Circuit acknowledged that Mr. Ageloff admitted to restitution in the amount of at least -- don't hold me to these precise words -- of eighty

million dollars. The problem was that we didn't identify the victims, among other things.

So my comment was, all of this litigation now in support of a man who's already been found guilty of -- of squirreling away assets to defeat a restitution claim. Interesting, interesting. So if you sense some frustration, you're right.

MR. FENSTERMAKER: Your Honor, one thing I'd like to say is, Mr. Ageloff was never convicted of squirreling away assets --

THE COURT: What was the crime?

MR. FENSTERMAKER: The crime, Your Honor, was not reporting income that was produced from the ill-gotten gains.

THE COURT: I rest my case.

Go ahead.

MR. SPECTOR: Judge, the idea of having an extensive proceeding to the litigate the issue of whether the house stocks have value is -- is just totally inappropriate at this stage of the proceedings.

THE COURT: Somebody buys stock at X dollars and sells it as X minus Y. If he or she is the victim of fraud, what they're due is at least the difference between those two numbers.

MR. FENSTERMAKER: Your Honor, I'm not disputing

that, but -- but I'd like to briefly address that specific issue because that's something that I would like to present to the Court in my motion that I'm suggesting.

Mr. Ageloff, for restitution purposes, is only liable for the loss that he caused. There can be no dispute in this case that some of that difference of your X and Y example is attributable to the short selling that took place in this case, which by any -- anybody's definition and by everybody's agreement, I think, was illegal. And Mr. Ageloff had nothing to do with the short selling in this case, Your Honor.

And much, if not most of the loss in this case was caused not by Mr. Ageloff's scheme but by the short sell. And that's something that I would like to -- to aggressively address in this motion, Your Honor, because it's clear that the cases I've read on restitution say that Mr. Ageloff will only be held liable for what he caused. And certainly what he caused was not caused as a result of that short selling, which we was a victim of.

And I understand that you could say, well, criminals can't be victims, but without question, what caused this whole scheme to unravel was the short selling, which was illegal by anybody's definition. And I think that the -- the FBI investigated that -- my understanding is there were two FBI agents involved in the investigation of

the illegal short selling. The SEC and the NASD were both notified with respect to the illegal short selling. And it was that -- that illegal contact, Your Honor -- conduct, Your Honor, that created most of the losses here.

I'm not saying that Mr. Ageloff wasn't wrong and that he wasn't -- wasn't justly convicted of the crime, Your Honor. But what I'm saying is that the restitution should be correctly calculated. It shouldn't be just guessed upon because we don't like Mr. Ageloff and the fact that he -- he stole some money.

THE COURT: I'm sure his -- his counsel in the criminal case didn't guess when he came to the number, as I recall, in the plea agreement. I think it's in the plea agreement.

MR. SPECTOR: I believe that's correct, Your Honor. I don't know whether it was in the plea agreement or another document but --

THE COURT: Okay. Look --

MR. SPECTOR: It's certainly clear that he agreed to the amount of eighty million dollars in restitution.

THE COURT: Let's set a date for the hearing. If you want to file some motions, file it in a week.

Does May 17th work for everybody?

MR. FENSTERMAKER: Your Honor --

MR. SPECTOR: That's fine with the government,

Judge.

MR. FENSTERMAKER: Your Honor, can I have -- can I have a slightly longer period of time than a week. I have an arbitration that I have on Monday, the 29th.

THE COURT: Two weeks.

MR. FENSTERMAKER: Yes, Your Honor.

THE COURT: Thank you and good day.

THE DEFENDANT: Your Honor, may I --

MR. SPECTOR: Judge, I assume the government --

THE DEFENDANT: May I address the Court, Your Honor.

THE COURT: No.

Yes, sir?

MR. SPECTOR: I assume the government can wait to respond until after the hearing.

THE COURT: Yeah.

MR. SPECTOR: Thank you, Judge.

THE COURT: Next case.

THE CLERK: Okay, so, Mr. Fenstermaker, you have until April 6th.

MR. FENSTERMAKER: Thank you.

MR. SPECTOR: I'm sorry, did we have a date of the hearing?

THE CLERK: May 17th.

MR. SPECTOR: Oh, May 17th, okay.

THE CLERK: May 17th at 9:30.

MR. SPECTOR: Thank you, Judge.

* * * * * * * * *

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

ELIZABETH BARRON April 5, 2010