

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

JM:DAS

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 6, 2010

**BY HAND AND ECF**
The Honorable Raymond J. Dearie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

       Re:  United States v. Roy Ageloff
            Criminal Docket No. 98-1129S (RJD)

Dear Judge Dearie:

      The government respectfully submits this letter in response to several filings by the defendant.  As the Court is aware, an evidentiary hearing on restitution is scheduled for May 17, 2010.[1]

      First, the defendant filed a letter on March 27, 2010, in which he acknowledged that he was convicted in the Middle District of Florida for money laundering ("the Florida Conviction").  Despite this acknowledgment, however, the defendant continues to deny that the Florida Conviction arose from his attempt to hide the proceeds of the crimes for which he was convicted in the instant case, and claims that such an allegation is simply a ploy by the government to unfairly "dirty up" the defendant.  Defense Submission, March 27, 2010, at 1.  The evidence shows that the defendant's denial is false.

---

    [1]At the previous status conference held on March 23, 2010, the Court permitted the government to respond to the defendant's pending motion after the evidentiary hearing scheduled for May 17, 2010.  In light of the somewhat complex procedural posture that the case has assumed since the status conference, the government has submitted the instant letter prior to the scheduled hearing.  Nonetheless, the government reserves the right to submit post-hearing briefing as necessary.

The government has obtained the transcript of the guilty plea and sentencing in connection with the Florida Conviction. These documents are attached hereto as Exhibits 1 and 2, and make abundantly clear that the Florida Conviction arose from the defendant's attempt to launder proceeds of the instant offense:

> THE COURT: Mr. Ageloff, do you then admit that in your conversations with your brother while you were at Coleman between November 2001 and October 2003, that it was your intent not only to manage the investment and disbursement or distribution of funds that you had derived from your securities fraud activities in New York but to conceal those funds from the United States?
>
> THE DEFENDANT: Yes.

Transcript of Sentencing, at 27-28 (attached hereto as Exhibit 2).

Second, the defendant has made several applications in which he apparently seeks to contest the issue of loss causation. In his most recent submission, the defendant requests that the Court hold a three month hearing on loss causation. Defense Submission, May 4, 2010, at 1. The defendant's argument, in sum, is that "short sellers" bear a greater measure of responsibility for the loss to investors. Id., at 2. This argument is completely without merit. As an initial matter, this very claim was resolved as a final matter at the defendant's sentencing:

> THE COURT: The multiple causation, I have always difficulties with it. With due respect to counsel, although I understand the villenous short-sellers played a role in bringing [Hanover] to its [knees] and ultimately Adler Coleman to its knees, these activities were after the fraud, certainly after the intended fraud. This was what brought this house of cards -- and indeed it was a house of cards, doomed inevitably to this state of collapse.
>
> I think we need to distinguish between the fraud and the attempt to fraud and those events that followed: the short selling, the efforts by Mr. Ageloff and

-2-

>            others to meet the sales, the efforts to
>            induce the authorities to stop the trading.
>            This is all damage control, it seems to me,
>            and has virtually nothing to do with the
>            loss.

Transcript of Sentencing, August 15, 2001, at 63-64 (attached hereto as Exhibit 3).

    Indeed, the issue of loss causation is beyond the scope of the proceedings currently before the Court. The mandate from the Court of Appeals was limited to the narrow issue of compiling a list of all identified victims and each victim's total loss amount. See <u>United States v. Catoggio</u>, 326 F.3d 323 (2d Cir. 2003). The restitution statue defines loss for purposes of restitution as "the amount of the loss sustained by each victim as a result of the offense." 18 U.S.C. § 3663(a)(i)(B)(i)(I). As noted above, the Court has already held that the full amount of investor losses are a result of the offenses of conviction, and that the short-selling is irrelevant to this analysis. Nothing in the <u>Catoggio</u> opinion authorizes the defendant to reopen this question.

    Therefore, the hearing before the Court is confined to the exceedingly narrow issue of whether the investor names have been correctly compiled, and whether their loss figures have been correctly added together. As noted previously, the government will provide brief testimony from Peter Melley, who will testify as to how the investor names and loss figures were compiled from the blue sheet trading data.

    Finally, even if the defendant's loss causation theory could properly be re-argued to the Court at this late stage, it is both factually and legally baseless. As the Court has already noted, the defendant cannot build a fraudulent house of cards and then blame another criminal actor for knocking it down. Such a result was certainly reasonably foreseeable when the defendant commenced the fraud, and indeed is a common end to most pump-and-dump schemes. In this context, defendant's attempt to hold a mini-trial on the supposed malfeasance of others is legally impermissible. See <u>United States v. Zafar</u>, 2008 WL 4138219 (2d Cir. 2008).

    Third, the defendant claims that the restitution proceeding should be "dismissed" due to the delay in determining his restitution. Defense Submission, April 5, 2010. In fact, a significant portion of the delay arose from actions of the defendant. As noted above, for nearly all of the years 2008 and

2009, the defendant was in custody in the Middle District of Florida in connection with the Florida Conviction, a matter which required resolution before the instant matter could resume. Moreover, during 2007 the defendant and his then-counsel were engaged in negotiations with the government in an attempt to resolve this matter.

In any event, the defendant's so-called "Speedy Sentencing" argument is foreclosed by the law of the case: in Catoggio, the Second Circuit rejected the same argument the defendant makes here, noting that the intent behind the statutory requirements for a speedy resolution of restitution matters is to protect victims, not the defendant. See Catoggio, 326 F.3d at 330. As such, the Due Process concerns associated with the timely imposition of a sentence of imprisonment, which were expounded upon in United States v. Ray, 578 F.3d 184 (2d Cir. 2009), are not implicated in the instant proceeding, which involves only the calculation of restitution.

Finally, the defendant recently filed a petition for writ of mandamus before the Second Circuit. In this petition, the defendant seeks an order from the Court of Appeals directing this Court to consider various applications, including the defendant's motion to "dismiss" the restitution proceeding, and to appoint a defense expert for loss causation issues. The defendant's mandamus petition is meritless, and in any event should not cause any delay in the scheduled May 17, 2010 hearing, as none of the issues raised in the mandamus petition purport to divest this Court of jurisdiction to proceed with the hearing. See United States v. Salerno, 868 F.2d 524, 529 (2d Cir. 1989) (holding that district court may retain jurisdiction to proceed with a trial, despite the pendency of a defendant's interlocutory double jeopardy appeal, where the appeal is found to be frivolous).

   The Court should therefore proceed with the May 17, 2010 hearing, after which the government will seek imposition of an order of restitution in the amount of $190,339,436.65.[2]

         Respectfully Submitted,

         LORETTA E. LYNCH
         UNITED STATES ATTORNEY


      By: /s/Daniel Spector
        Daniel A. Spector
        Assistant U.S. Attorney
        (718) 254-6345

cc: Scott Fenstermaker (via ECF)

---

[2] The Clerk's Office currently holds approximately $2.7 million in restitution funds, which will be distributed to victims after the Court enters a restitution order.